IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**AGNES ZONTHEA BATISTE**                                              **PLAINTIFF**

**VERSUS**                                         **CIVIL ACTION NO. 1:08cv1352-RHW**

**RITA LUMPKIN and PEARL RIVER COUNTY**                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court are [34] a motion to dismiss or for summary judgment filed by Pearl River County on June 11, 2009, and [38] and [43] motions to dismiss or for summary judgment filed by Rita Lumpkin on June 19, 2009 and October 27, 2009, respectively. Under the Rules then in effect, Plaintiff's responses to the motions were due June 29, 2009, July 9, 2009, and November 16, 2009.[1] Plaintiff has neither responded, nor requested any extension of time to respond to any of the motions, however, despite Plaintiff's lack of a response, because these are dispositive motions, the Court must address them on the merits.[2]

Procedural History

Agnes Zonthea Batiste filed this 42 U.S.C. § 1983 prisoner's civil rights lawsuit on October 22, 2008, claiming violation of her constitutional rights while she was incarcerated in the Pearl River County jail on two charges of sales of controlled substances. According to Batiste, the sales charges were later dismissed, and she pled guilty and is serving time on two

---

[1]Rule 7.2(C) and (D), *Uniform Local Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (effective November 1, 2004), [now Rule 7(b)(3) and (4), *Local Uniform Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (effective December 1, 2009)].

[2]Rule 7.2(C)(2), *Uniform Local Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (effective November 1, 2004), [now Rule 7 (b)(3)(E), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (effective December 1, 2009)].

charges of conspiracy to commit a felony (armed robbery), for which she is serving two concurrent three and one half year sentences. [34-3, p. 10]. Batiste's testimony with respect to her convictions and sentences is corroborated by both the Mississippi Department of Corrections website and her order of conviction and sentence. [34-4, pp. 8-12] Batiste was in the Pearl River County jail from September 5, 2007 until her transfer to the custody of the Mississippi Department of Corrections on March 3, 2009. [34-3, pp. 7-8] In the present lawsuit, she claims jail officials failed to protect her from being attacked by other inmates,[3] and failed to provide her proper medical care. On April 2, 2009, the Court conducted an omnibus/screening hearing of the case. All parties consented to jurisdiction by the U.S. Magistrate Judge [28] pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, and the case was reassigned to the undersigned for all purposes by order [29] entered April 6, 2009. Based on Batiste's pleadings and hearing testimony, the Court dismissed Plaintiff's failure to protect claim by order [33] entered on May 28, 2009, leaving only her medical claim to go forward.

## Summary Judgment Standard

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). On a motion for summary judgment, the Court considers "whether the evidence presents a sufficient disagreement

---

[3] Based on Batiste's hearing testimony, the Court dismissed her failure to protect claim by order [33] entered May 28, 2009.

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Rule 56(e) provides in part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading, rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. <u>If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.</u>

*Fed. R. Civ. P.* 56 (e) (emphasis added). The Court may grant a motion for summary judgment which is accompanied by competent supporting evidence if the opposing party fails to present controverting evidence. *Fed. R. Civ. P. 56 (e)*. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S. Ct. 462, 121 L. Ed. 2d 371 (1992).

The moving party must show the absence of a genuine issue of material fact by affidavit or other evidentiary materials. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 n.2, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). For the Court to find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could find for the nonmoving party, *i.e.*, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for him. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50, 106 S. Ct. at 2510-11 (1986).

If the movant establishes the absence of a genuine issue of material fact, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), *citing Celotex*, 477 U. S. at 325, 106 S. Ct. at 2553-54. The nonmovant cannot discharge this burden by simply referring to allegations or denials in his pleadings, but must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists. See *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); Fed. R.Civ. P. 56(e). If the nonmovant fails to present evidence showing a genuine issue of material facts exists, "the summary judgment motion must be granted." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

<u>Deliberate Indifference to Serious Medical Needs</u>

To establish a constitutional violation due to deliberate indifference to serious medical needs, Batiste bore the burden of proving: (1) the Defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) that the Defendants actually drew that inference; and (3) that the Defendants' response indicated that they intended that the harm occur. *Thompson v. Upshur County TX, et al.*, 245 F.3d 447 (5th Cir. 2001); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (plaintiff must show officials "refused to treat [her], ignored [her] complaints, intentionally treated [her] incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs."). In other words, Batiste was required to show the Defendants' deliberate indifference to her serious

medical needs unnecessarily and wantonly inflicted harm on her.[4]  Deliberate indifference cannot be inferred from a negligent, or even a grossly negligent, response to a substantial risk of serious harm.  *Id.*  To act "deliberately" means to act intentionally; that is, knowingly and voluntarily and not because of mistake or accident.  Even if Batiste's medical care were to be deemed inadequate, that would not suffice to establish a constitutional violation.

> [n]ot all inadequate medical care rises to the level of an Eighth Amendment violation; "[it] is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  A plaintiff must prove "objectively that [she] was exposed to a substantial risk of serious harm: and that "jail officials acted or failed to act with  indifference to that risk" which requires actual knowledge and  disregard.

(Footnotes omitted).  *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (5th Cir. 2004).

Batiste's lawsuit arises from events which began on Friday, April 4, 2008.  According to her pleadings and hearing testimony, sometime between 8:00 and 9:00 p.m. on that date, a fight broke out in the female zone of the Pearl River County jail.  Batiste was not involved in the fight, until she took it upon herself to intervene to try to stop it.  When she involved herself in the fray, two inmates began fighting with her, and Batiste was injured.  She testified she received a blowout fracture of her left eye, and complains she was not provided proper medical care for her injury.  [34-3, pp. 13-16]

Batiste testified that on April 5, 2008, the morning after the fight, she asked the nurse for, and received, an ice pack for swelling in her face.  She testified she saw nurse Rita Lumpkin on Monday, April 7, 2008.  Nurse Lumpkin examined Batiste, told her she had a hematoma, and that she would be fine.  Lumpkin gave Batiste ibuprofen for pain, another ice pack, and some eye

---

[4]  *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).

5

ointment. Batiste testified at one point that she did not request to see Nurse Lumpkin again, and at another point she stated she put in "maybe two or three" sick calls, but did not see Nurse Lumpkin. Batiste testified she next saw someone about the injury on April 18, 2008, when she was taken to the eye doctor. [34-3, pp. 17- 20]  Batiste testified she had an xray on April 25, 2008, which did not show any fracture. [34-3, p. 27]  Batiste testified she saw the eye doctor twice in April 2008, again in June and September 2008, and in January 2009. [34-3, pp. 23-24]

Records from the Poplarville Eye Clinic reflect treatment of Batiste on April 18, 2008, for complaints of her eye burning, watering, blurry and swollen and feeling pressure.  The doctor's comments on that date indicate "trichiasis lower lid left eye (eyelashes turning in and scratching cornea) secondary to swelling from trauma, no internal swelling, no retinal holes or tears."  The doctor prescribed Ciloxan antibiotic ointment for 5-7 days, and jail medication administration records indicate Batiste was provided the medication.  At her next visit on May 18, 2008, Batiste complained her eye still hurt, itched, watered and had painful discharge.  She was treated in the office.  The record for this office visit notes that Batiste is allergic to sulfa, and states, "d/c (discontinue) all meds (eye related), d/c patches, only non-preserved ATS, Refresh plus qid 1 wk".  Jail medication administration records reflect that the eyewash was discontinued as directed on May 19, 2008.  On August 13, 2008, Batiste returned to the eye clinic complaining of eye pain and muscle spasms below her eye.  The doctor comments state, "eyelashes turning in both eyes," for which she was again prescribed artificial tears.  On September 5, 2008, Batiste reported she was "about 60% better," and the doctor noted dry eye syndrome, trichiasis and history of ocular trauma, prescribed Restasis and artificial tears, and recommended that she return in two months.  At her final visit on January 9, 2009, Batiste complained of floaters and

dry eye syndrome, burning and watering, and was prescribed Restasis if symptoms persist, and over the counter liquigel. While the records presented to the Court do refer to trauma, they do not reflect a "blowout fracture," and, as previously stated no fracture appeared on Batiste's xray.

With respect to her claim against Nurse Lumpkin, Batiste testified she doubted Lumpkin would have sent her to the doctor if Batiste's mother had not called, and that Lumpkin prescribed a "sulfur-based cream" and Batiste is allergic to sulfur. Batiste stated her eye swelled shut, and one of the other nurses at the jail asked her if she was allergic to sulfur. When Batiste advised that she was allergic, the nurse discontinued the medicine. The only injury Batiste claims from the sulfur-based drug was that her eye swelled shut, but this resolved in about four days. [34-3, p. 28] When Batiste was questioned as to whether she had ever put in a sick call request where Nurse Lumpkin did not see her, she replied that she had done so around the first of February (2009), but she conceded that this request did not relate to the injuries of which she complains in this lawsuit. Batiste feels she should have had "more fast, adequate medical care..." Batiste disagreed with the treatment Nurse Lumpkin provided for her injury. [34-3, p. 30]

The evidence before the Court indicates Batiste was provided reasonable medical care for the injury she sustained on Friday, April 4, 2008. By her own admission, Batiste was given an ice pack on Saturday when she requested it, and on Monday she was seen by the nurse, given another ice pack, ibuprofen and eye ointment. Within two weeks of the injury, she received xrays which showed no fracture, and she was taken to a specialist at the Poplarville Eye Clinic who prescribed medication which she was provided. By her own testimony, she was taken to the eye doctor twice during the month she was injured, and an additional three times over the next nine months. These actions do not demonstrate the required "deliberate indifference" essential to

her constitutional claim of denial of medical care. While Batiste's alleges Nurse Lumpkin prescribed medication to which she was allergic, she also testified that when she told the nurse she was allergic, the medication was discontinued, and her facial swelling resolved on its own. Mere negligence, neglect or even medical malpractice do not constitute a valid § 1983 claim. See, *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1991). The fact that Batiste may disagree with the treatment she received does not equate to a violation of her constitutional rights. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Prison officials are not liable for denial of medical treatment unless they know of and disregard an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Batiste has failed to come forward with evidence that she was denied proper medical care, much less that the Defendants were deliberately indifferent to her serious medical needs. Batiste's pleadings and testimony do not indicate she intended to make state law claims for medical negligence, and she has failed to comply with statutory prerequisites to filing any such claim.[5]

Finally, Batiste has failed to present any evidence of an official policy or custom of Pearl River County to deny jail inmates appropriate medical care, which resulted in her injury, thus there is no foundation for a finding of liability against Pearl River County. *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Pursuant to applicable law, and from the evidence of record, the Court finds summary judgment appropriate as to both Defendants on Plaintiff's claims. It is therefore,

---

[5]Miss. Code Ann. § 15-1-36(15) requires as a condition precedent that one provide at least 60 days written notice of a medical negligence claim against a health care provider prior to commencing litigation. Miss. Code Ann. § 11-1-58 requires certification that a plaintiff has consulted with an expert regarding the standard of care applicable to her claim, and that based on the consultation, there exists a reasonable basis for commencement of the action.

**ORDERED AND ADJUDGED**, that Defendants' motions for summary judgment are granted. A separate judgment shall be entered in favor of both Defendants.

SO ORDERED, this the 2nd day of February, 2010.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE